First case this morning is the case of Graber v. Boresky. Ms. Lilley? Good morning, Your Honors. Janie Lilley on behalf of Agent Boresky. I would like to reserve four minutes for rebuttal. Granted. Your Honors, the District Court erroneously created a new category of damages liability for Secret Service Special Agents involved in presidential security functions at a designated national special security event. The Supreme Court, as recently as Egbert, has made clear that extensions of damages liabilities into new contexts, of which this is undoubtedly one, are barred where even one special factor counsels hesitation. Before we get to the merits of your argument, which you've really, your opening remarks are, we want to talk a little bit about our jurisdiction to consider this. The notice of appeal only appeals to qualified immunity denial following the summary judgment motion. Your brief, however, makes no arguments about qualified immunity, speaks only of Bivens. Yes, Your Honor. Bivens was a ruling. The Bivens ruling in this case was in 2019 and is not the subject of the appeal. How do we have jurisdiction to review the Bivens ruling? Your Honor, as we explained in our brief, we renewed our arguments on the availability of a Bivens cause of action at the summary judgment stage. And the District Court denied summary judgment, denying those those claims. And therefore, it is appropriate on an appeal from a summary judgment to for this court to consider those claims under its collateral, under the collateral order doctrine. And if I may, plaintiff's appellate jurisdiction argument turns a bossy on its head. The Supreme Court has been clear that the question of whether to create a new constitutional damages action is a threshold, important question that must be resolved at the outset of litigation. For the reasons that the court has explained, there are significant separation of powers concerns with allowing a novel damages action to proceed to trial and to judgment. And that's true of any time the federal government is a party in the litigation and some plaintiff comes up with a new theory of liability. Are you saying that every 12 v. 6 ruling for when the federal government's a participant would be a collateral order doctrine? Absolutely not, Your Honor. We're saying that the significant separation of powers interests at issue and these types of novel damages actions under the Constitution that the Supreme Court has recognized over and over again are the types of significant constitutional issues that are not remediable on appeal after final judgment. Why wasn't there an appeal on the motion to dismiss when the district court initially said I will, as a district court judge, allow the Bivens claim to proceed? Your Honor, there's nothing about the collateral order doctrine that requires the government to appeal at the motion to dismiss stage. If it decides to proceed to the summary judgment stage, that was the case in Wilkie, it isn't the case in many of these Bivens actions that the collateral order doctrine applies not because of the stage of litigation but because of the significant interests that are not remediable after judgment. A 30-day time frame within which to file notice of appeal wouldn't apply? Yes, Your Honor. It applies at the motion to dismiss stage, but the collateral order doctrine isn't limited to appellate jurisdiction at a particular stage. The collateral order doctrine applies because of the significance of the interests, and when the government has taken an appeal in this context or a private party where the collateral order doctrine is applicable, this court has appellate jurisdiction to consider those issues at that point. So collateral order jurisdiction is proper at this point at the summary judgment stage. I don't think I follow you. I don't understand how if there's a ruling on summary judgment that doesn't have anything to do with the Bivens claim. But in this case, it had everything to do with the Bivens claim. Is that then the only reason why we can consider it? Because what you just said is at any time we could consider an order, a subject on a collateral order doctrine, even if it's not timely appealed. Your Honor, I'm glad that you've allowed me to clarify. The question, the Abbasi question of whether to create a novel damages liability was properly presented at the summary judgment stage, and it was denied. The fact that the district court didn't specifically address it in the order is perhaps why there might be a little bit of confusion about it. But the district court denied the government's motion on the ground on qualified immunity and implicitly denied the government's motion on summary judgment to decline, to create a novel damages action and therefore an appeal at this stage is proper. And you're saying by denying the motion for summary judgment for leave to conduct discovery implicit in that is there's a clearly established right the court is finding. Right. And that your position is it can't exist because you could never bring a claim to pursue that right against this part. Your Honor, I think our argument is much simpler at the motion for summary judgment stage. We we raised two arguments, one that under Abbasi, the district court could not allow this claim to proceed, that this was an improper extension of Bivens liability. The court denied our motion on that ground and therefore it was a denial of the precise issue that we've presented here and therefore appellate jurisdiction is proper. Because it's a denial of qualified immunity. No, Your Honor, because it was a denial of the Abbasi question. In fact, you waived the qualified immunity issue. That's not live here. We're just dealing with the Bivens issue. Exactly. We have not appealed the denial of qualified immunity in this appeal, Your Honor. And I was interested to hear what you answered to Judge Schwartz's questions because I it surprised me a little because I thought your argument was that we have jurisdiction over the Bivens issue. Because the order denying your argument against Bivens on the motion to dismiss merged into the order denying summary judgment. But what I just heard you say in response to Judge Schwartz's question is that no, regardless of the merger issue of the prior order merging into the summary judgment order, we have jurisdiction because you raised the Bivens argument at summary judgment. That argument was rejected. Yes, Your Honor. Albeit without explanation. Yes, Your Honor. Because the explanation dealt with the qualified immunity issue. Exactly, Your Honor. But it's very peculiar, the posture, right? Because we've got an explanation from the district court on qualified immunity, but you've specifically asked us not to review that because you've waived it because you want us to address the Bivens issue. Well, Your Honor. Am I understanding the procedural posture? You're exactly understanding the procedural posture. I'm not sure that it's peculiar, Your Honor. The peculiarity is that the district court didn't address the argument in its order, but that it was properly presented to the district court. Well, that might be peculiar, but it's also peculiar that you might have a path to victory on qualified immunity, but you're not. You've waived it. Your Honor, the government has not appealed qualified immunity in this appeal. So what is our jurisdiction to consider the Bivens ruling alone? What case can you tell us would permit this court on interlocutory appeal to review the Bivens ruling without a link, without a hook to the qualified immunity? Your Honor, I think there are any number of cases. I'd begin with Cohen itself. I know Cohen. Tell me about if there's any court that has said a Bivens ruling is interlocutorily appealable under the collateral order doctrine. Your Honor, we point to Wilkie. We point to a number of cases in which the Supreme Court or this Court has addressed the existence of a cause of action on interlocutory appeal. And the Court has never said that that is limited where... But if that's the case, then to every 12 v. 6 ruling that fails to state a claim where somebody's saying there's no cause of action here would be appealable. Where's the limiting principle? Is your limiting principle because of separation of powers? Our limiting principle is a BASI, that the important separation of powers interests that are implicated when a district court creates a new cause of action under the Constitution, a new category of damages, that those significant separation of powers concerns that the Supreme Court and this Court have recognized over and over again are the types of concerns that justify immediate appealability under the collateral order doctrine in the same way that similar concerns allow immediate appealability of a denial of qualified immunity. How do you get around Will v. Hillock? And in language in there, it was talking about collateral orders and what's appealable and what's not. It makes a reference to a Bivens claim not really being one that would be subject to the collateral order doctrine. Your Honor, for the record, it's Hill v. Willock, 546 U.S. 345. I don't have that particular language at my fingertips. But the collateral order doctrine is very clear that the types of interests that it is designed to recognize and protect are the types of interests that the Supreme Court and this Court have recognized are at issue in the recognition of a brand new cause of action by the judiciary. But you can't give me a case that where a court has said we will take collateral order doctrine authority over a Bivens ruling. Your Honor, other than the cases cited in our brief, this Court in Vanderklok, the Court in Wilkins. Vanderklok was linked to a qualified immunity ruling. It was, and in that case, like in the Supreme Court cases, the Court emphasized that the existence of a cause of action is a threshold question that leads to the qualified immunity ruling is what those cases say. And now that you're telling us we are not attaching ourselves to the doctrine of qualified immunity, I assume that's the government's argument. Forget the qualified immunity, Your Honors. We want a ruling on Bivens as an order that is reviewable in the collateral order doctrine. Is that the government's request? Yes, Your Honor. That is the government's request, and consistent with the Supreme Court's doctrine in Abbasi and Egbert and its case that over and over again it says the courts have a responsibility. But aren't all those cases linked to qualified immunity? They are. But the Court never got to the qualified immunity issue in those cases precisely because of the importance of deciding at the threshold can this case go forward before reaching qualified immunity on an interlocutory appeal. And that's precisely why the collateral order doctrine applies in this case. These are important questions akin to the question of the denial of qualified immunity that must be resolved at the outset and heard on an interlocutory appeal. The Sixth Circuit in Himmelreich thought that Will v. Halleck foreclosed the position that you're arguing now. Why was the Sixth Circuit wrong? Your Honor, the Sixth Circuit did not consider, did not even address in the Himmelreich opinion the types of important separation of powers issues that occur when you subject an individual defendant to trial and judgment on an erroneously recognized claim. The Sixth Circuit simply just didn't recognize the types of separation of powers issues that this Court and the Supreme Court have recognized are significant and require early resolution. So you're asking us to create a split with the Sixth Circuit? Yes, Your Honor. We acknowledge the Sixth Circuit reached the opposite conclusion erroneously and we're asking this Court to reach the correct conclusion consistent with its own precedence and the Supreme Court precedent. And there are no other Circuit cases out there? No, Your Honor. Egbert didn't come to the Supreme Court, as I recall. It didn't go up through an interlocutory review. No, Your Honor. I believe in that case the District Court agreed that there was no cause of action. The Ninth Circuit reversed and the Supreme Court clearly said that that extension of Bivens damages liability was wrong, but that was on a different posture. All right, we'll hear you on rebuttal. Ms. Lilly, let's hear from Mr. Hetznecker. Good morning, Your Honors. If it may please the Court, my name is Paul Hetznecker. I represent the Plaintiff Appellee Jeremy Graber, a political protester at the Democratic National Convention, falsely arrested by Agent Boresky. The threshold question is really whether or not, in this case, this Court has jurisdiction. And the Court does not have jurisdiction. It's clear that without a qualified immunity appeal by Boresky's counsel, this Court does not have jurisdiction. They make a clever argument, conflating under this threshold issue doctrine that they presented novelly, that somehow jurisdiction and the Bivens question are combined. And they're not. They're not. It's reached only, as Vanderklok made clear when this Court has jurisdiction, on an appeal of qualified immunity. And the reason that is is because I have the right to explore through discovery the question of whether qualified immunity exists. If I explore that, I'm confident I can prove that there was no qualified immunity. But if I lose that, then obviously I would take an appeal and we're facing a very different question before the Court. That's not where we're here. We're here on a denial of summary judgment. Regardless of whether there's a factual dispute, as I'm sure you're aware, we often deny interlocutory appeals because the district court has rightly deemed a factual dispute that's material to the determination, right? But even if here there were no such factual dispute, qualified immunity still is not a basis for our jurisdiction because they've waived it. Correct. Absolutely correct. Okay. So we're really just dealing with whether Bivens is sufficient for us to hear this on an interlocutory basis. That's correct. And is that jurisdictional question that we're dealing with the same as the one that the Sixth Circuit dealt with in Himmelright? I think Himmelright is instructive because what Himmelright says, again, is the court's jurisdiction is linked to the appeal of qualified immunity. Qualified immunity is a doctrine which protects agents or officers from liability after there's an exposition of the facts. And that's the bottom line. Here, there was no exposition of the facts. Here, there was a premature summary judgment motion filed after Moresky's counsel attempted to negotiate discovery with me. But I think that, I think if we go back to Himmelright, and we understand your reason for why you want discovery, but our first issue is whether or not we have jurisdiction to consider the outcome of the judge's ruling. And in Himmelright, the court looked at whether or not a Bivens ruling was interlocutorily appealable and concluded that it was not. Correct. How is that case different from this one? It's not. Okay. It's not. And do you agree that in that case, that court also talked about our court's prior rulings, like Vanderklok and others, where it said in circuits where there's been a Bivens review, it's been hooked to the qualified immunity. And, in fact, in Vanderklok, this honorable court made it very clear that the only way jurisdiction was reached, in very clear language, was based upon the appeal of qualified immunity. Okay. So let's think about Bivens was a court-created cause of action. Correct. Now a Supreme Court precedent very recently suggesting and sending tea leaves that that cause of action is not cognizable. Should this be a circumstance where this court should exercise collateral order review because this lawsuit is predicated on a claim that may not exist? Well, I think that would be a dangerous extension, I believe, of the interpretation that the government has put forth on Bivens. Egbert doesn't overrule Bivens. It does not overrule Bivens. Egbert essentially analogizes Hernandez v. Mason as essentially providing a stopgap or protection for Border Patrol agents. If we analogize to this case, this is the most important political event a country can hold, a national political convention, where my client was exercising his First Amendment rights when he was falsely arrested. That's an entirely different context. So you're saying that the court should not evaluate this at this point because there needs to be an examination of the context to see if your claims are of a different context? Your Honor, absolutely. So you're telling us that there would be an issue of fact concerning whether this is a like context of Bivens or a different context? It has to be because that's what Ziegler v. Abbasi says. Ziegler v. Abbasi does not preclude Bivens' actions. In fact, it strongly says Bivens is still a compelling cause of action, with limitations, but still a compelling cause of action. It gives with one hand and it takes away with the other in a remarkable way, and Egbert does the same. The facts of Egbert were rather similar to the facts of Bivens, a point made by the dissent. But I would disagree on this point, Your Honor, because I think the context and the factual exposition of the context is very important. This is a national political convention. This is where the First Amendment is cherished, where the political discourse, however difficult it might be, the political discourse must be protected. So when a political protester is falsely arrested by a Secret Service agent, taken over the border, the security fence, and taken into a land where the Fourth Amendment now doesn't apply based on the government's argument, that's a dangerous precedent to set. Mesa was shot and killed. He was. But it was cross-border. And you're absolutely right, Your Honor. It was cross-border, and specifically the Supreme Court ruled Mason, there was no reason to extend Bivens in Mason because it was cross-border and it implicated foreign relations with the country. So what's the reason to extend Bivens to your case? I don't think it's an extension. I think it's a Bivens case. I think it's a Fourth Amendment claim. How do your facts map onto the facts of Bivens? It's a Fourth Amendment claim, Your Honor. It involves a front-line officer, a Secret Service agent, just like Bivens involved a narcotics officer. It doesn't involve high officials as in Ziggler versus DeBassett. Did Egbert involve a federal officer? It did. What constitutional claim did it implicate? At the Fourth Amendment, Your Honor. Okay, so those two aren't going to work for you. Egbert tells us that, so you need something else. You're right, but the only additional significant point that Justice Thomas writes in his opinion is that it was a Border Patrol agent near the border, and that became significant. In fact, in the response to Justice Sotomayor's dissent, Justice Thomas made it very clear that because it involved the Border Patrol and it involved an examination near the border, that became a significant foreign policy question that this Court, that the courts, that the judiciary would defer to the executive branch. We can't do that here. We can't defer. I would ask that this case involves significant reasons for judicial oversight, that this Court should not abandon its role in overseeing what the government does, what an agent does in a particular situation, especially at a time of a national political convention. That's perhaps a very good policy argument for expanding Bivens, but the Supreme Court has told us to do the opposite, and the Court has made clear that any judicial authorization of a Bivens cause of action implicates the separation of powers. Why is that structural constitutional concern insufficient to prevent this cause from being recognized in your case? Because it would eliminate the right of an individual, my client, a political protester, exercising his First Amendment rights to see redress of his grievances when he was falsely arrested, and I don't think the Supreme Court, I know the Supreme Court has not said that. Yes, you're absolutely correct, there's been a limitation. Egbert counsels that there's limitation on Bivens, but it hasn't overruled Bivens, and nor has this Court overruled it. It hasn't overruled it, but it is, you know, and Justice Gorsuch's concurrence was sort of like, you know, what are we doing here? We're saying that the most recent Bivens cases, at least the ones that I've read recently, they all say that there's a Bivens cause of action, but then they say you don't qualify, and the reason you don't qualify is because your facts aren't the same as Bivens. In the other two cases, there are three cases, there are two others where it's still kind of hanging by a thread, right? Yes, but I think that... So you almost, to bring a good plaintiff's case, you almost have to find facts that map on to one of those three prior cases, Bivens and the other two. And that's what's so disturbing about this, without a recognition, and this Court has not denied that Bivens exists, nor has the Supreme Court. And in a case like this, what maps clearly is that it involves the Fourth Amendment, it involves a front-line Secret Service agent, just like in Bivens it involved a front-line narcotics officer. So the protections provided under the Fourth Amendment for all of us, with respect to a state agent or a municipal county officer, should apply in Bivens as well. If we take a step back from that, we enter a dangerous territory. I don't think we're there yet. The difficulty I think it might be is your facts involved a warrant, Bivens was warrantless. Your facts involved an event in a public place, Bivens happened in a private home. Bivens was then, you know, we know the fact pattern at the house, back at the station. We don't have those circumstances. You have a different clause of the Constitution at play. If you look at the way the Supreme Court is attacking these cases, I think you'd have to agree with what Judge Hardiman just said, which is you've got to be on all fours, and I think you have difficulties. You agree that there are differences because you're a warrant case, that was a warrantless case. Yeah, and I think that's absolutely correct. And I think the problem is if we start to parse out all the various exceptions, we destroy the cloth and the protection of the Fourth Amendment altogether. We basically say that it doesn't exist. And I know that in Justice Gorsuch's concurrence, he seems to say that. I don't think we need to go there, not with the record that we have here. What I would just say in response, Your Honor, is that, number one, it is a public place, but it's the most sacred public time. It is a political convention, a national political convention, where the First Amendment is not only lauded, it is the dynamic upon which we base our entire Constitution. That's one. Two, if the warrant is based upon false information, which I have yet to be able to explore, then it seems to me that it's right on point, that the Bivens, the concept of Bivens was to extend 1983 to Federal officers. That was the reason that was the progeny. You know, it's clear that Bivens over the last 50 years has been successful. Well, I'm glad you brought that up because Congress hasn't expanded. Correct. It's done the Hyde Amendment. That's correct. And provided a remedy there. And in Egbert, the court recognized that it doesn't have to be a congressional remedy, as long as there's a remedy available even through the administrative process available through the executive branch. The Department of Homeland Security has such a mechanism to bring forth complaints, even though it would not necessarily give you the remedies that you might be able to get in a court of law. How do we get around that because of what the Supreme Court said? If there's one reason to counsel hesitation, courts are supposed to stay their hand and not allow the cause of action to proceed. How do we get around that? I think we look at the reality of it. It's a fiction. It's a fiction. If you bring a complaint against Homeland Security, expect that that's going to result in deterrence or even an evaluation of the agent's conduct, I think it's a fiction. That argument was rejected in Egbert. Even if we assume you're correct, you're spot on on that, that this is some sort of illusory right. Right. What can we do about it when the Supreme Court considered that very same argument and rejected it in Egbert? We can, Your Honor, you could reject this because there is no jurisdiction, and send it back and allow me to explore the fact-based reasons why all these cases are parsed out under Bivens. Let me do that. Let me go back and fill in the gap with the factual record that should support the reasons, compelling reasons, that when a political event occurs and when a protester is falsely arrested at a national political convention, that that person has a cause of action still left. That when you create a security fence and you go beyond it, or you don't go beyond it, the case of Mr. Grabers was brought over the fence, and there's no dispute about that, that it doesn't create a totalitarian regime beyond that fence where the Fourth Amendment doesn't apply. That's the danger here. The danger is to say we parse out Bivens to such an extent that we tear the flag, the protection of the Fourth Amendment altogether because there are so many holes in it, it doesn't protect us anymore. Here, if we say, if this Court says, no jurisdiction, we'll send it back, let the plaintiff explore the facts, but do so on the basis of that thin ray of hope that's left that Bivens can survive if there's a fact-based exposition. And I'm going to do that if this Court allows me to do that. Even if we assume every single one of your facts would be proven as your client believed them to have existed and that there was a falsity, how do we get around the language in Egbert that says if there's one reason to think that Congress wouldn't want this kind of cause of action to proceed, we can't allow it. How do we get around it? As I said before, I think, Your Honor, the only way to get around it at this point, at this juncture, is that there's no jurisdiction for them to come here in the first place. So if we allow Bivens to survive, to let me go back and fight that fight, then Bivens survives at least for that time. For the government to conflate the jurisdiction argument with the special factors argument or the extension of Bivens' argument is, I think, is also a fiction. And as this Court has noted, there's no case that supports that. You make, I think, a good argument on the equities about the way this motion came down when you're about to get into the meat of the case through discovery. But isn't it also true that the government didn't do anything improper when it filed a motion to dismiss, arguing Bivens? You're not arguing that that motion to dismiss was improper, arguing that, hey, look, this is not cognizable under Bivens. No, but they made a discretionary decision because they were going to consider taking that appeal and they asked me for an extension on that. And they decided ultimately not to appeal the 12B6 because they re-argued that same position at the status conference with Judge Rue for discovery. They put forth the same argument on 12B6, and I said, Judge, they had an opportunity. They had an opportunity to make that argument, and they had that opportunity to appeal it, as this Court noted earlier. They certainly could have, but the fact, as Ms. Lilly said, the fact that they didn't, for whatever strategic reason they had, that doesn't prevent them from arguing it now under the merger doctrine. That prior order merges into the summary judgment order. The problem is we've never had the opportunity to address that in the lower court based on facts. If we say that Bivens – No, that's right, because their argument is – Right. They have to accept the facts as you pleaded them, obviously under Rule 12. So their argument is, fine, grant the plaintiff all of his facts. Under those facts, this is not cognizable under Bivens, C, E.G., Mesa, Abbasi, Egbert. But, as I said, Your Honor, I can distinguish those cases based on these facts. On the facts. Right. If we say the context is important, as Justice Thomas says, border patrol, national security issues, if we talk about the context, there isn't any more compelling context than this one. Political protest. Absolutely. At a national convention. All right. So Mesa, you distinguish Mesa and Egbert because those were border cases, and here you've got the most sacrosanct speech that we have, i.e. political speech. Correct. And if I pose – That might beg the question of, well, the home the court has told us many times is sacrosanct, too, and Egbert's home was involved. Correct. Correct. But it was a border case. Right. But it was a border case, and, in fact, that's what Justice Thomas relied on when he used Hernandez v. Mesa to support his position. Here, what we're really saying, to flip it on its head, is to say, go beyond the security gate or drive over the security gate and you're not protected by the Fourth Amendment at all. You are now in a totalitarian space designated by the federal government, by its own discretion, to say it's a national special security event, and now the Fourth Amendment doesn't apply. So an agent who commits a crime, and think about this, if he's involved in a conspiracy with the police to drag him over this border, this security fence, brought into the Fourth Amendment, the government's argument is essentially it doesn't apply because Bivens cannot be extended in this context. This is not an extension of Bivens. This is exactly why Bivens was decided, to protect Fourth Amendment rights for someone who was falsely arrested, especially in the context of a national political convention, when essentially we should be lauding and protecting those rights, the First Amendment rights of the protesters. So the mandate, from the government's point of view, to the Secret Service, is protect the rights of political protesters. That's mandate number one. Not just protect the president and protect the people inside the security fence, but protect those cherished rights. Because if we abandon that by parsing out the Bivens issue, we've destroyed any protection that Bivens might still offer for those individuals whose rights are violated by a Federal agent. Essentially, if we destroy Bivens, no one can bring a cause of action against a Federal agent, no one, regardless of political ideological point of view. We will be foreclosed from protection under the Fourth Amendment because a Federal agent is involved. And that's their argument. And that's a frightening argument and a dangerous one. Thank you, Mr. Hetznecker. Rebuttal, Ms. Lewis. Thank you, Your Honors. I have three points on rebuttal. The first is plaintiff's focus on discovery on remand is precisely why this Court has interlocutory appellate jurisdiction. We know under Egbert this claim cannot proceed, and yet plaintiff wants to go back to the district court and engage in the type of intrusive discovery that damages the separation of powers concerns that the Supreme Court and this Court have recognized bar this type of action. Judge Schwartz asked about Vanderklok earlier. And Vanderklok's jurisdictional ruling, it stands for two unremarkable propositions. With respect to the First Amendment claim, the Court could consider the creation of damages liability because of the interlocutory appeal under denial of qualified immunity in that case. With respect to the Fourth Amendment claim in that case, this Court similarly held because the defendant only raised the merits of the Fourth Amendment claim, that is, whether the defendant had unlawfully violated the Fourth Amendment, that issue could not proceed on interlocutory appeal. And so it's entirely consistent here to recognize interlocutory appellate jurisdiction over this claim with Vanderklok. And finally, simply because the Supreme Court and this Court's cases have addressed this threshold issue in connection with a qualified immunity appeal does not mean it must. In those cases, there was an appeal from denial of qualified immunity, but the courts in those cases, including Vanderklok, addressed the threshold question only, not the denial of qualified immunity. And it is clear that allowing an unlawful and novel damages cause of action in this case at this stage and allowing discovery in the district court when we know that the case should not proceed is precisely the type of irreparable harm that the collateral order doctrine recognizes is subject to an immediate interlocutory appeal. Would you address the points made by Mr. Hetznecker distinguishing Egbert and Hernandez? Your Honor, Egbert did distinguish Bivens and Hernandez for very similar reasons that this case is very different from Bivens. This involved presidential security at a designated national security event. The type of discovery that plaintiff is talking about at this case is the type of discovery that is intrusive and disruptive to executive branch functions and national security functions, as we explained in our brief. Allowing a case like this to go forward would cause agents in similar circumstances to hesitate in much the same way that this Court found that a similar damages liability could not obtain against TSA agents. But an 1883 action could have been brought if this was a local officer and courts don't hesitate at all and discovery proceeds on probable cause determinations with some frequency, right? That's correct, Your Honor, because Congress established a statutory mechanism for precisely that type of cause of action here. Congress hasn't acted, and the Supreme Court has said over and over again that the creation of precisely that type of cause of action and that liability is the project of the legislature and not the courts. But if you're right, if you're right, while we wait for the legislature to do something, Mr. Hetznecker is correct. Federal agents can just act with impunity, deprive people of First Amendment rights, Fourth Amendment rights, all kinds of constitutional rights. And the answer from the government is you don't have a remedy. Well, I guess your answer is, well, you could file a complaint with DHS and they'll handle it in due course. Your Honor, as we explained in our brief, the existence of the Hyde Amendment is a reason to hesitate from creating novel damages liability, and the Fourth and Eighth Circuits have relied on the existence of that remedial scheme as a reason to hesitate before creating brand-new damages liability in very similar circumstances. If there are no further questions, Your Honor. Thank you, Ms. Lilly. Thank you, Mr. Hetznecker. The court will take the matter under advisory.